No. 18-12344

═══════════════════════════════════════════

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

═══════════════════════════════════════════

CHARLES T. JOHNSON, individually and on behalf of all others
similarly situated,

Plaintiff-Appellee

JENNA DICKENSON,

Interested Party & Appellant

vs.

NPAS SOLUTIONS, LLC, a Tennessee limited liability company,

Defendant-Appellee

───────────────────────────────────────────

Appeal from the United States District Court for the
Southern District of Florida, No. 9:17-cv-80393-RLR

═══════════════════════════════════════════

OPENING BRIEF OF APPELLANT JENNA DICKENSON

═══════════════════════════════════════════

JOHN W. DAVIS
501 W. Broadway, Suite 800
San Diego, CA  92101
Telephone:  619-400-4870
john@johnwdavis.com

ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA  92037-6231
Telephone:  858-263-9581

C. BENJAMIN NUTLEY
1055 E. Colorado Blvd., 5th Floor
Pasadena, CA  91106
Telephone:  626-204-4060
nutley@zenlaw.com

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, counsel for Appellant Jenna Dickenson certifies that the following persons and entities have or may have an interest in the outcome of this case:

1.    Davidson, James L. – Counsel for Plaintiff-Appellee

2.    Davis, John William – Counsel for Appellant Jenna Dickenson

3.    Davis, Law Office of John W. – Counsel for Appellant Jenna Dickenson

4.    Debevoise & Plimpton LLP – Counsel for Defendant-Appellee

5.    Dickenson, Jenna – Objecting Class Member – Appellant

6.    Ehren, Michael L. – Counsel for Defendant-Appellee

7.    Goldberg, Martin B. – Counsel for Defendant-Appellee

8.    Greenwald Davidson Radbil PLLC – Counsel for Plaintiff-Appellee

9.    Greenwald, Michael L. – Counsel for Plaintiff-Appellee

10.    Hopkins, Honorable James M. – Magistrate Judge

11.    Isaacson, Eric Alan – Counsel for Appellant Jenna Dickenson

12.    Johnson, Charles T. – Plaintiff-Appellee

13.    Johnson, Jesse S. – Counsel for Plaintiff-Appellee

14.    Lash, Alan David – Counsel for Defendant-Appellee

15.    Lash & Goldberg LLP – Counsel for Defendant-Appellee

16.    Monaghan, Maura K. – Counsel for Defendant-Appellee

17.    NPAS Solutions LLC – Defendant-Appellee

18.    Nutley, C. Benjamin – Counsel for Appellant Jenna Dickenson

19.    Parallon Business Solutions LLC – Parent Company of Defendant-Appellee

20.    Radbil, Aaron D. – Counsel for Plaintiff-Appellee

21.    Rosenberg, Honorable Robin L. – District Court Judge

22.    Stahl, Jacob W. – Counsel for Defendant-Appellee

23.    Van Wey, Lorelei Jane – Counsel for Defendant-Appellee

STATEMENT REGARDING ORAL ARGUMENT

Jenna Dickenson believes that oral argument would be helpful in resolving the following issues of first impression:

• Whether the district court gave a sufficient explanation of its reasons for approving the settlement, for awarding attorneys' fees to class counsel and a $6,000 bounty to the named plaintiff, and for overruling objections to enable this Court to engage in meaningful appellate review. *See, e.g., Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 558 (2010)("It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination. ... Unless such an explanation is given, adequate appellate review is not feasible …"); *Protective Committee v. Anderson,* 390 U.S. 414, 424 (1968)(order approving a settlement cannot be sustained when "there is no explanation of how the strengths and weaknesses of the … causes of action were evaluated or upon what grounds it was concluded that a settlement … was 'fair and equitable'"); *Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 507 (5th Cir. Jan. 30, 1981)("the trial court is to 'examine the settlement in light of the objections raised ***and set forth on the record a reasoned response to the objections***

***including findings of fact and conclusions of law necessary to***

***support the response***'")(emphasis added)(quoting *Cotton v. Hinton,*

559 F.2d 1326, 1331 (5th Cir. 1977).

　　•Whether the district court may require class members to file

objections before the motions for final settlement approval and

attorneys' fees are available.  *See Allen v. Bedolla,* 787 F.3d 1218, 1225-

26 (9th Cir. 2015); *Redman v. RadioShack Corp.,* 768 F.3d 622, 637-38

(7th Cir. 2014); *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988,

993-95 (9th Cir. 2010); *Lawler v. Johnson*, __So. 3d.__, 2017 WL

4707517, at *7-*9 (Ala. Oct. 20, 2017).

　　•Whether, and under what circumstances, a named plaintiff such

as appellee Charles T. Johnson may obtain an "incentive award"

compensating him for personal services rendered in connection with the

recovery of a common fund – an award that Dickenson contends was

precluded under the Supreme Court's seminal common-fund precedents

of *Trustees v. Greenough,* 105 U.S. 527, 538 (1882)*,* and *Central RR &*

*Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885).

• Whether Johnson adequately documented the basis for requesting an incentive award. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 311 (6th Cir. 2016).

• Whether an award of attorneys' fees from a fund created by settling federal statutory claims must take account of the fact that *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010), repudiates this Court's twelve-factor balancing test of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), and *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768 (11th Cir. 1991), and that *Perdue* would limit even a successful litigant's recovery of attorneys' fees to the attorneys' reasonable hourly rate multiplied by the hours reasonably expended. *See Perdue,* 559 U.S. at 552-554; *Haggart v. Woodley,* 809 F.3d 1336, 1358-59 (Fed. Cir. 2016); *Pierce v. Visteon Corp.,* 791 F.3d 782, 787 (7th Cir. 2015).

# TABLE OF CONTENTS

I.    SUBJECT MATTER AND APPELLATE JURISDICTION ............. 1

II.   ISSUES PRESENTED ........................................................ 1

III.  STATEMENT OF THE CASE ............................................ 4

    A. Nature of the Case ....................................................... 4

    B. Statement of Facts & Procedural History ...................... 6

    C. Standard of Review ...................................................... 15

IV.   SUMMARY OF ARGUMENT ........................................... 18

V.    ARGUMENT .................................................................. 21

    A. The District Court Violated Procedures Mandated by Rule 23(h) and Due Process by Making Objections Due before the Motions for an Award of Attorneys' Fees were Filed ................................. 21

    B. The District Court Provided Insufficient Explanation for Its Rulings to Permit Meaningful Appellate Review ........................ 27

        1. The District Court Offered No Meaningful Explanation for Approving the Settlement ........................................... 27

        2. The District Court Offered No Meaningful Explanation for Awarding 30% of the Fund as Attorneys' Fees ........ 34

        3. The District Court Erred by Failing to Provide a Reasoned Response to Dickenson's Objections ............... 44

C.  The Named Plaintiff's $6,000 Incentive Award Is Unlawful and Unsupported .................................................................................. 47

D.  *Trustees v. Greenough* and *Central RR & Banking Co. v. Pettus* Proscribe Incentive Awards for Class Representatives in Common-Fund Cases ................................................................... 47

    1.  Johnson's $6,000 Incentive Bonus is Contrary to Rule 23 Principles Prohibiting Special Benefits for Class Representatives ............................................................... 51

    2.  Johnson's $6,000 Bonus for Settling Class Claims for Less than $8.00 Per Class Member Produces a Disabling Conflict of Interest that Casts Doubt on the Adequacy of the Settlement and that Should Preclude Him from Settling on Behalf of the Class ....................................... 53

E.  The Supreme Court's Opinion in *Perdue v. Kenny A* Repudiates Eleventh Circuit Fee Jurisprudence and Presumptively Limits Awards to the Attorneys' Lodestar ............................................. 59

F.  The District Court Failed to Consider Class Counsel's Time and Hours Devoted to the Case ........................................................... 61

VI.   CONCLUSION .................................................................................. 66

VII.  CERTIFICATE OF COMPLIANCE ............................................... 68

VIII. CERTIFICATE OF SERVICE ........................................................ 69

# <u>TABLE OF AUTHORITIES</u>

## CASES

*ACLU of Georgia v. Barnes*
    168 F.3d 423 (11th Cir. 1999) .......................................................... 16

*Allen v. Bedolla*
    787 F.3d 1218 (9th Cir. 2015) .................................... 1, 17, 19, 25, 45

*Armstrong v. Board of School Directors*
    616 F.2d 305 (7th Cir. 1974) ........................................................... 32

*Bailey v. Great Lakes Canning, Inc.*
    908 F.2d 38 (6th Cir. 1990) ............................................................. 52

*Bais Yaakov of Spring Valley v. Act, Inc.*
    798 F.3d 46 (1st Cir. 2015).............................................................. 50

*Baxter v. Savannah Sugar Refining Corp.*
    495 F.2d 437 (5th Cir. 1977) ........................................................... 37

*Binta B. ex rel. SA v. Gordon*
    710 F.3d 608 (6th Cir. 2013) ..................................................... 36, 43

*Bivins v. Wrap It Up, Inc.*
    548 F.3d 1348 (11th Cir. 2008) ....................................................... 15

*Boeing v. Van Gemert*
    444 U.S. 472 (1980) ........................................................................ 47

*Bosse v. Oklahoma*
    137 S.Ct. 1 (2016) ........................................................................... 51

*Bryan v. Pittsburgh Plate Glass Co.*
    494 F.2d 799 (3d Cir. 1974) ............................................................... 32

*Burns v. Lawther*
    53 F.3d 1237 (11th Cir. 1995) ......................................................... 17

*Camden I Condominium Ass'n v. Dunkle*
    946 F.2d 768 (11th Cir. 1991) ................................................... passim

*Centerpoint Energy Houston v. Harris County Toll Road Auth.,*
    436 F.3d 541 (5th Cir. 2006) ........................................................... 39

*Central Bank & RR v. Pettus*
    113 U.S. 116 (1885) .................................................................. passim

*City of Detroit v. Grinnell Corp.*
    560 F.2d 1093 (2d Cir. 1977) ........................................................... 40

*Cotton v. Hinton*
    559 F.2d 1326 (5th Cir. 1977) ................................................... passim

*Crutcher v. Logan*
    102 F.2d 612 (5th Cir. 1939) ........................................................... 49

*Dennis v. Kellogg*
    697 F.3d 858 (9th Cir. 2012) .................................................... 17, 45

*Edelman & Combs v. Law*
    663 So.2d 957 (Ala. 1995) ................................................................. 26

*Eichenholtz v. Brennan*
    52 F.3d 478 (3d Cir. 1995) ................................................................. 32

*Eisen v. Carlisle & Jacquelin*
  417 U. S. 156 (1974) ........................................................ 22

*Farrar v. Hobby*
  506 U.S. 103 (1992) ......................................................... 65

*Faught v. American Home Shield Corp.*
  668 F. 3d 1233 (11th Cir. 2011) ..................................... 35

*Felzen v. CalPERS*
  1314 F.3d 873 (7th Cir. 1998) ........................................ 32

*Fidel v. Farley*
  534 F.3d 508 (6th Cir. 2008) .......................................... 17

*Flinn v. FMC Corp.*
  528 F.2d 1169 (4th Cir. 1975) ........................................ 51

*Gilmere v. City of Atlanta*
  931 F.2d 811 (11th Cir. 1991) ........................................ 36

*Girsh v. Jepson*
  521 F.2d 153 (3d Cir. 1975)............................................ 31

*Goldberger v. Integrated Resources, Inc.*
  209 F.3d 43 (2d Cir. 2000)................................... 40, 43, 66

*Gortat v. Capala Brothers, Inc.*
  949 F.Supp.2d 374 (E.D.N.Y. 2013)................................ 49

*Granada Investments, Inc. v. DWG Corp.*
  962 F.2d 1203 (6th Cir. 1992) ........................................ 49

*Gray ex rel. Alexander v. Bostic*
 613 F.3d 1035 (11th Cir. 2010) ....................................................... 36

*Grunin v. International House of Pancakes*
 513 F.2d 114 (8th Cir. 1975) ......................................................... 40

*Grunin v. International House of Pancakes*
 513 F.2d 114 (8th Cir. 1975) ......................................................... 64

*Gunter v. Ridgewood Energy Corp.*
 223 F.3d 190 (3d Cir. 2000).............................................. 39, 42, 43

*Hadix v. Johnson*
 322 F.3d 895 (6th Cir. 2003) ......................................................... 57

*Haggart v. Woodley*
 809 F.3d 1336 (Fed. Cir. 2016) ................................................ 4, 60

*Hansberry v. Lee*
 311 US 32 (1940) ......................................................................... 22

*Hensley v. Eckerhart*
 461 U.S. 424 (1983) ..................................................................... 36

*Holmes v. Continental Can Co.*
 706 F.2d 1144 (11th Cir. 1983) ........................................ 16, 52, 53

*In re Air Crash Disaster at Florida Everglades*
 549 F.2d 1006 (5th Cir. 1971) ....................................................... 38

*In re Bluetooth Headset Prod. Liabl. Litig.*
 654 F.3d 935 (9th Cir. 2011) ......................................................... 36

*In re Cendant Corp. PRIDES Litig.*
  243 F.3d 722 (3d Cir. 2001) ............................................................. 39

*In re Cendant PRIDES Litig.*
  243 F.3d 722 (3d Cir. 2001) ............................................................. 43

*In re Continental Illinois Sec. Litig.*
  962 F.2d 566 (7th Cir. 1992) ...................................................... 50, 58

*In re Corrugated Container Antitrust Litig.*
  643 F.2d 195 (5th Cir. April 3, 1981) .................................... 2, 28, 45

*In re Dry Max Pampers Litig.*
  724 F.3d 713 (6th Cir. 2013) ..................................................... 54, 56

*In re High Sulphur Content Gasoline Prods. Litig.*
  517 F.3d 220 (5th Cir. 2008) ........................................................... 38

*In re Mercury Interactive Corp. Sec. Litig.*
  618 F.3d 988 (9th Cir. 2010) ..................................... 1, 9, 18, 22, 23

*In re Mexico Money Transfer Litig.*
  267 F.3d 743 (7th Cir. 2001) ........................................................... 33

*In re Natl. Football League Players Concussion Injury Litig.*
  821 F.3d 410 (3d Cir. 2016) ............................................................ 23

*In re Target Corp. Customer Data Sec. Breach Litig.*
  847 F.3d 608 (8th Cir. 2017) ........................................................... 30

*In re Westinghouse Sec. Litig.*
  219 F.Supp.2d 657 (W.D. Pa. 2002) ............................................... 49

*In re WPPSS*
    19 F.3d 1291 (9th Cir. 1994) ......................................................... 43

*Jason v. Houston Indep. Sch. Dist.*
    158 F.3d 205 (5th Cir. 1998) ........................................................ 65

*Johnson v. Ga. Highway Express, Inc.*
    488 F.2d 714 (5th Cir. 1974) ................................................... passim

*Jordan v. Mark IV Hair Styles, Inc.*
    806 F.2d 695 (6th Cir. 1986) ........................................................ 39

*Kincade v. General Tire & Rubber Co.*
    635 F.2d 501 (5th Cir. Jan. 30, 1981) ............................ 2, 11, 45, 52

*Krakauer v. Dish Network L.L.C.,* No. 1:14-CV-333, 2017 WL
    2242952 (M.D.N.C. May 22, 2017) ................................................ 10

*Lawler v. Johnson*
    __So. 3d.__ No. 1151347, 2017 WL 4707517
    (Ala. Oct. 20, 2017). ............................................................... passim

*Lee v. Southern Homes Sites Corp.*
    429 F.2d 290 (5th Cir. 1970) ........................................................ 16

*Leverso v. SouthTrust Bank of AL., N.A.*
    18 F.3d 1527 (11th Cir. 1994) ........................................... 13, 29, 34

*Maher v. Zapata Corp.*
    714 F.2d 436 (5th Cir. 1983) ............................................. 32, 33, 45

*Mandujano v. Basic Vegetable Prods., Inc.*
    541 F.2d 832 (9th Cir. 1976) ................................................. 45, 46

*McDaniel v. County of Schenectady*
 595 F.3d 411 (2d Cir. 2010).............................................................40

*McKenzie v. Cooper, Levins & Pastko, Inc.*
 990 F.2d 1183 (11th Cir.1993) .......................................................35

*Minor v. Comm'r of Soc. Sec.*
 826 F.3d 878 (6th Cir. 2016) ..........................................................36

*Montgomery Aetna Plywood, Inc.*
 231 F.3d 399 (7th Cir. 2000) ..........................................................58

*Newman v. Stein*
 464 F.2d 689 (2d Cir. 1972)............................................................31

*Officers for Justice v. Civil Service Commission of the City and*
 *County of San Francisco*
 688 F.2d 615 (9th Cir.1982) ...........................................................52

*Pennsylvania v. Delaware Valley Citizens Council*
 478 U.S. 546 (1986) .......................................................................60

*Perdue v. Kenny A. ex rel. Winn*
 559 U.S. 542 (2010) ............................................................... passim

*Piambino v. Bailey (Piambino I)*
 610 F.2d 1306 (5th Cir. February 6, 1980)..............................37, 39

*Piambino v. Bailey (Piambino II)*
 757 F.2d 1112 (11th Cir. 1985) ................................2, 28, 29, 31, 38

*Pickett v. Sheridan Health Care Center*
 664 F.3d 632 (7th Cir. 2011) ..........................................................43

*Pierce v. Visteon Corp.*
    791 F.3d 782 (7th Cir. 2015) ...................................................... 4, 60

*Plummer v. Chemical Bank*
    668 F.2d 654 (2d Cir. 1982) .............................................................. 31

*Plummer v. Chemical Bank*
    91 F.R.D. 434, 442 (S.D.N.Y. 1981) ............................................... 53

*Portillo v. Cunningham*
    872 F.3d 728 (5th Cir. 2017) ............................................................ 36

*Powers v. Eichen*
    229 F.3d 1249 (9th Cir. 2000) ................................................... 41, 43

*Protective Committee v. Anderson*
    390 U.S. 414 (1968) ..................................................................... 2, 31

*Radcliffe v. Experian Info. Solutions*
    715 F.3d 1157 (9th Cir.2013) ........................................................... 57

*Redman v. RadioShack Corp.*
    768 F.3d 622 (7th Cir. 2014) .......................................... 1, 9, 23, 25

*Reynolds v. Beneficial Nat. Bank*
    288 F.3d 277 (7th Cir. 2002) ........................................................... 30

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*
    490 U.S. 477 (1989) ......................................................................... 51

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009) ........................................................... 57

*Sabala v. Western Gillette, Inc.*
  516 F.2d 1251 (5th Cir. 1975) ......................................................... 37

*Saunders v. Naval Air Rework Facility*
  608 F.2d 1308 (9th Cir. 1979) ......................................................... 46

*Schwarz v. Folloder*
  767 F.2d 125 (5th Cir. 1985) ........................................................... 39

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*
  825 F.3d 299 (6th Cir. 2016) .................................. 20, 46, 53, 54, 62

*Silvikous v. Pharaon*
  54 F.3d 697 (11th Cir. 1995) ........................................................... 18

*Sottoriva v. Claps*
  617 F.3d 971 (7th Cir. 2010) ........................................................... 43

*Sprague v. Ticonic Nat'l Bank*
  307 U.S. 161 (1939) ........................................................................ 44

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ...................................................... 39, 50

*Strong v. BellSouth Telecommunications, Inc.*
  137 F.3d 844 (5th Cir. 1998) ........................................................... 39

*Sullivan v. DB Investments, Inc.*
  667 F.3d 273 (3d Cir. 2010) ............................................................ 50

*Synfuel Techs v. DHL Express (USA)*
  463 F.3d 646 (7th Cir. 2006) ........................................................... 30

*Trustees v. Greenough*
    105 U.S. 527 (1882) ................................................................ passim

*United States v. City of Miami*
    614 F.2d 1322 (5th Cir. 1980) ...................................................27, 52

*United States v. Equitable Trust Co.*
    283 U.S. 738 (1931) ................................................................11, 44

*United States v. Hatter*
    532 U.S. 557 (2001) .........................................................................51

*Vassalle v. Midland Funding LLC*
    708 F.3d 747 (6th Cir. 2013) ....................................................55, 56

*Vega v. T-Mobile USA, Inc.*
    564 F.3d 1256 (11th Cir. 2009) .......................................................15

*Von Clark v. Butler*
    916 F.2d 255 (5th Cir.1990) ...........................................................65

*Waters v. Int'l Precious Metals Corp.*
    190 F.3d 1291 (11th Cir.1999) .....................................35, 62, 63, 65

*Zucker v. Occidental Petroleum Corp.*
    192 F.3d 1323 (9th Cir. 1999) .........................................................40

*Zucker v. Westinghouse Electric*
    374 F.3d 221 (3d Cir. 2004)............................................................49

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. V ........................................................................ 1, 21

## RULES

Fed. R. Civ. P. 23 ...................................................................3, 17, 18, 47

Fed. R. Civ. P. 23(h) ..............................................................1, 21, 22, 25

Fed. R. Civ. P. 23(h)(1) ................................................................... 21

Fed. R. Civ. P. 23(h)(3). ................................................................27, 34

## STATUTES

28 U.S.C. §1291 ................................................................................ 1

47 U.S.C. §227 .............................................................................. 1, 4

47 U.S.C. §227(b)(3) ........................................................................ 1

47 U.S.C. §227(b)(3)(B) .................................................................... 4

47 U.S.C. §227(b)(3)(C) .................................................................... 5

## OTHER AUTHORITIES

ALAN HIRSCH & DIANE SHEEHEY, AWARDING ATTORNEYS' FEES
AND MANAGING FEE LITIGATION
(Federal Judicial Center, 2d ed. 2005) ...........................................50

BRYAN A. GARNER, ET AL., THE LAW OF JUDICIAL PRECEDENT
(2016) ...............................................................................................51

John P. Dawson, *Lawyers and Involuntary Clients: Attorney*
*Fees from Funds*
87 HARV. L. REV. 1597 (1974)..........................................................49

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to*
*Class Action Plaintiffs: An Empirical Study*
53 U.C.L.A. L. Rev. 1303 (2006) .....................................................50

## I.    SUBJECT MATTER AND APPELLATE JURISDICTION

As this case asserts claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, the district court had federal-question jurisdiction under 28 U.S.C. §1331, and under 47 U.S.C. 227(b)(3).  *See* DE1:1-2¶¶1-6(Complaint); DE15:1-2¶¶1-5(Amended Complaint).  This Court has jurisdiction under 28 U.S.C. §1291 to review the district court's final judgment, entered on May 8, 2018, which disposed of all claims.  *See* DE53.  Appellant Jenna Dickenson timely filed her notice of appeal on June 3, 2018.  DE54.

## II.    ISSUES PRESENTED

1.    Did the district court violate due process and Rule 23(h) by making class members' objections due before the motion for attorneys' fees that the objections would challenge?  *See* U.S. Const. Amend. V; Fed.R.Civ.P. 23(h); *Allen v. Bedolla,* 787 F.3d 1218, 1225-26 (9th Cir. 2015); *Redman v. RadioShack Corp.,* 768 F.3d 622, 637-38 (7th Cir. 2014*); In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 993-95 (9th Cir. 2010); *Lawler v. Johnson*, __So. 3d.__, 2017 WL 4707517, at \*7-\*9 (Ala. Oct. 20, 2017).

2. Did the district court abuse its discretion by failing to provide any reasoned explanations or findings supporting its rulings approving a class-action settlement, awarding attorneys' fees, and overruling objections? *See Protective Committee v. Anderson,* 390 U.S. 414, 424 (1968); *Faught v. American Home Shield Corp.,* 668 F.3d 1233, 1242 (11th Cir. 2011); *Piambino v. Bailey,* 757 F.2d 1112, 1139 (11th Cir. 1985)("*Piambino II*"); *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir. April 3, 1981); *Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 507 (5th Cir. Jan. 30, 1981); *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977); Fed.R.Civ.P. 23(h)(3).

3. Did the district court's approval of a special bonus of $6,000 as an "incentive award" to class representative Charles T. Johnson violate the rule of *Trustees v. Greenough,* 105 U.S. 527, 538 (1882)*, and Central RR & Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885), precluding compensation for named plaintiffs' personal service in common-fund class actions?

4.  Did the district court's approval of the special $6,000 payment to Johnson, who settled the case for a recovery coming to under $8.00 per class member, also violate Rule 23's fundamental principle that class representatives shall not be treated more favorably than ordinary class members?

5.  Does the disparity between Johnson's $6,000 bonus for himself, and the settlement's recovery of under $8.00 per class member, support the conclusion that the settlement is unfair and that Johnson's representation of the class has been inadequate?

6.  Does the Eleventh Circuit's 12-factor approach to attorneys' fees from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), and *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 771 & n.3 (11th Cir. 1991), survive the Supreme Court's repudiation of that approach in *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551-552 (2010), and *Perdue's* holding that that reasonable attorneys' fees ordinarily should be the attorneys' reasonable hourly rates multiplied by the hours reasonably expended?

- 3 -

*See Perdue,* 559 U.S. at 553-554; *Haggart v. Woodley,* 809 F.3d 1336, 1354-59 (Fed. Cir. 2016); *Pierce v. Visteon Corp.,* 791 F.3d 782, 787 (7th Cir. 2015).

7.  Assuming *Camden I* and *Johnson* survive *Perdue,* did the district court err in awarding fees under those decisions without really considering or weighing the twelve *Johnson* factors, which require the court to first consider the time and labor devoted to the matter – which Class Counsel withheld? *See Camden I,* 946 F.3d at 771 & n.3; *Johnson,* 488 F.2d at 717-19.

## III.   STATEMENT OF THE CASE

### A.   Nature of the Case

This is a consumer class action filed under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, which prohibits certain spam phone calls placed using an automatic telephone dialing system ("ATDS"), and which imposes liability of $500 per call – trebled to $1,500 per call for willful (i.e., knowing or reckless) violators. See 47 U.S.C. §227(b)(3)(B) ($500 statutory damages for each violation); 47

U.S.C. §227(b)(3)(C) (permitting trebling, to $1,500 each for "willful" violations).

Named Plaintiff Charles T. Johnson alleged that defendant NPAS Solutions violated the TCPA when calling consumers on their cellular telephones, via an automatic telephone dialing system, at wrong numbers – in that the subscriber to the phone number called was different from the party that NPAS Solutions was trying to reach. *See* DE1:1-2¶¶1-6 (Complaint); DE15:1-2¶¶1-5 (Amended Complaint). The class as certified by the district court is defined to include "All persons in the United States who (a) received calls from NPAS Solutions, LLC between March 28, 2013 and the date of this order that (b) were directed to a phone number assigned to a cellular telephone service, (c) for which NPAS Solutions' records contain a "WN" designation, and (d) were placed using an automatic telephone dialing system. DE38:2.  NPAS Solutions has conceded that 179,642 unique cellular telephone numbers fall within this class definition.  DE038:2 (Preliminary Approval Order).

Assuming that 179,642 class members received but one violative phone call apiece, TCPA statutory damages at $500 to $1,500 range

from a low of $89,821,000 for negligent violations to $269,463,000 if the violations were willful – which is to say, reckless. As many class members doubtless received multiple violative calls, the statutory damages likely realistically exceeded a billion dollars.

Charles T. Johnson nonetheless agreed to settle and bar class members' claims for just $1.432 million – which is less than two percent of the lowest possible statutory damages that would have been awarded had NPAS's violations been merely negligent, and if each class member received only one violative call apiece. Assuming a class of 179,642, which NPAS conceded, the $1.432 million settlement comes to just $7.97 apiece. Johnson, on the other hand, will receive a bonus payment of $6,000 for acting as class representative to compromise other class members' claims at less than $8 apiece. Class member Jenna Dickenson, who timely objected to the proposed settlement, fee award, and $6,000 bonus to Johnson, now appeals.

B.    Statement of Facts & Procedural History

Named plaintiff Charles T. Johnson filed his class-action complaint on March 28, 2017. DE1. On May 2, 2017, NPAS filed a

motion to dismiss and to strike Mr. Johnson's class-action allegations. DE13.  Johnson filed an amended complaint on May 11, 2017.  DE15.

On May 12, 2017, Johnson served initial written discovery requests, to which NPAS responded on June 29, 2017.  The parties served their initial disclosures on May 18, 2017.  The Court issued its Scheduling Order on May 23, 2017. DE18. On May 25, 2017, NPAS moved to strike the amended complaint's class allegations, DE19, which motion the district court denied on May 30, 2017.  DE20.

Before conducting any meaningful discovery, the parties on June 12, 2017, jointly notified the Court that they had selected the Honorable Diane M. Welsh (Ret.) of JAMS to serve as mediator.   DE23. NPAS answered Johnson's amended class action complaint on June 13, 2017. DE24.  The parties then moved for entry of a stipulated protective order, DE25, which the district court granted with amendments. DE30. On August 25, 2017, Mr. Johnson served the report of his expert witness, Anya Verkhovskaya, which detailed how she would identify class members' names and addresses based on the cellular telephone numbers in NPAS' records.  DE44-1:9¶53.  Mr. Johnson served his

responses and objections to NPAS' written discovery requests on
September 6, 2017.  NPAS served discovery requests seeking documents
related to Mr. Johnson's expert witness on October 3, 2017.  DE44-1:11-
15 (Greenwald Declaration).

Shortly thereafter, Johnson filed a Notice of Settlement on
November 2, 2017. DE33.

On November 29, 2017, Johnson filed his unopposed motion to
certify the class for settlement purposes, and for preliminary approval.
DE37.  The district court preliminarily approved the proposed
settlement on December 4, 2017, in an order that never discussed the
amount of damages at stake in the case, let alone compare them with
the amount for which the parties had agreed to settle the case.  *See*
DE38 (Preliminary Approval Order).  The Preliminary Approval Order
nonetheless directed that "Johnson may petition the Court to receive an
amount not to exceed $6,000 as acknowledgment of his role in
prosecuting this case on behalf of the class members."  DE38:6.
The Preliminary Approval Order set a deadline of April 6, 2018, for
plaintiff to file a motion for final approval and a motion for attorneys'
fees - eighteen days after the March 19, 2018, deadline it set for filing

objections to the proposed settlement and fee award. DE38:8. The

settlement administrator mailed notice to class members on January

18, 2018.  DE43-1:4, ¶6.

Class member Jenna Dickenson filed an objection to the proposed

settlement on March 19, 2018. DE42 (Objection).  Dickenson specifically

objected to the district court's schedule requiring objections to be filed in

advance of the motions for final settlement approval and attorneys' fees,

as a violation of fundamental due process and Federal Rule of Civil

Procedure 23(h), as applied in decisions such as the Ninth Circuit's in

*In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 993-95 (9th

Cir. 2010), the Seventh Circuit's in *Redman v. RadioShack Corp.,* 768

F.3d 622, 637-38 (7th Cir. 2014), and the Alabama Supreme Court's in

*Lawler v. Johnson*, __So. 3d.__, 2017 WL 4707517, at *7-*9 (Ala. Oct.

20, 2017).  Dickenson objected that class members, consistent with

fundamental due process and the procedure provided by Rule 23(h),

cannot be expected to anticipate and object to fee applications and

motions that have yet to be filed.  DE42:2-6.

Dickenson also objected that Johnson had failed to show why a

$1.432 million Settlement, coming to under two-percent of low-end

statutory damages, should be approved as fair, reasonable, and adequate.  DE42:6-9.  Dickenson noted, for example, that the recovery of approximately ***$8.00 per class member*** compared poorly with the damages of ***$1,200 per call*** recovered for class members in the most recent TCPA case to go to trial.  *See* DE42:6-8 (discussing *Krakauer v. Dish Network L.L.C.,* No. 1:14-CV-333, 2017 WL 2242952 (M.D.N.C. May 22, 2017)).

Dickenson also objected that although the Settlement recovered less than two percent of the TCPA statutory damages at stake at the case, amounting to but $8.00 per class member, it provided for a disproportionate ***$6,000 payment to the named plaintiff*** to "acknowledge" his service to the class.  Dickenson objected to this incentive award as contrary to the common-fund doctrine of *Trustees v. Greenough,* 105 U.S. 527, 537-38 (1882), and *Central RR & Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885), permitting a named plaintiff to recover litigation expenses including reasonable attorneys' fees, while barring any award for the named plaintiff's personal service in the case. *See* DE42:11-12.  Dickenson objected that the $6,000 payment to Johnson also violates the Rule 23 principle that "by choosing to bring

their action as a class action, the named plaintiffs 'disclaim[] any right to a preferred position in the settlement.'" *Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 506 n.5 (5th Cir. Jan. 30, 1981)(citation omitted); *see* DE42:13 (collecting cases).  Dickenson objected that the disproportionate payment to Johnson gave him an incentive to sell-out the class, and thus flagged a collusive and unfair settlement.  DE42:13.  Were awards permissible, Dickenson further objected that Johnson would need to document the work he did to earn his $6,000 bonus.  DE42:14-15.

With respect to attorneys' fees, although she was hamstrung by the district court's order requiring her to file her objection before Class Counsel would apply for fees, Dickenson challenged the notion that Class Counsel should automatically recover 30% of the common fund, noting that the Supreme Court's common-fund decisions had slashed 10% fee awards to just 5%.  DE42:10-11 (citing *Pettus,* 113 U.S. at 128, and *United States v. Equitable Trust Co.,* 283 U.S. 738, 746-47 (1931)).  Dickenson also noted that the twelve-factor "*Johnson* factors" approach to setting attorneys' fees applied by Eleventh Circuit precedents had been expressly repudiated by the Supreme Court in *Perdue v. Kenny A.*

*ex rel. Winn,* 559 U.S. 542, 551-52 (2010), which defines reasonable attorneys' fees for class-action contingency-fee lawyers in terms of their lodestar.

On April 6, 2018, Johnson filed a motion for final approval (DE43), motion for attorneys' fees (DE44) and, response to Ms. Dickenson's objections (DE45). Defendant NPAS also filed a response to objection on April 6, 2018. DE47.

On May 7, 2018, the district court held a hearing on Johnson's motions for final approval and attorneys' fees. Johnson, defendant, and objector Dickenson appeared through counsel. DE58. Dickenson's retained counsel reiterated her objections at the hearing. DE58:17-22. The district court made no findings during or at the conclusion of the hearing, but announced simply that it would enter the Final Order and Judgment in the form that had been submitted by the settling parties:

> *THE COURT*: All right. The Court has carefully considered all of the submissions before the Court and is going to enter the proposed final order and judgment that has been proposed by the Plaintiff and Defense.
>
> In so doing, the Court is going to grant the motion for final approval of class action judgment at Docket Entry 43, and costs and expenses, Docket Entry 44. And the Court has carefully considered the objection at Docket Entry 42 that

has been filed on behalf of objector Dickenson in conjunction with the response that was filed and the Court is going to overrule that objection, but nevertheless appreciate the argument counsel has made.

So, if there is nothing further, that will conclude the hearing. Thank you.

DE58:22.

The district court entered the Settling Parties' Final Order and Judgment that very day, approving the Settlement, and awarding attorneys' fees, costs, and $6,000 bonus to plaintiff Charles T. Johnson. DE53. The Final Order devoted but a single sentence to listing the factors that judges are supposed to carefully evaluate in approving a class-action settlement:

> The Court finds that the settlement of this action, on the terms and conditions set forth in the Settlement Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the class members, when considering, in their totality, the following factors: (1) the absence of any fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the Plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *See Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 [n.6] (11th Cir. 1994).

DE53:4(Final Order).  The Parties' Final Order, which the district court

adopted in whole, contained no discussion of any of those factors, and no

explanation for how or why they might support approving the

settlement.   *See id.*

The Final Order contained even less with respect to the court's

award of attorneys' fees and a special $6,000 payment to the named

plaintiff.    It ignored Rule 23(h)(3)'s requirement that that in awarding

attorneys' fees the court "must find the facts and state its legal

conclusions under Rule 52(a)," Fed.R.Civ.P. 23(h)(3), which provides

that "[t]he findings and conclusions may be stated on the record after

the close of the evidence or may appear in an opinion or a memorandum

of decision filed by the court."  Fed.R.Civ.P. 52(a)(1).  The district court

did not even find that the attorneys' fees were "reasonable" under Rule

23(h), much less explain why.

Instead, the Final Order recited only that "Defendant will

establish a $1,432,000.00 Settlement Fund," from which would be

deducted "Plaintiff's attorneys' fees in the amount of 30 percent of the

Fund, and the reimbursement of Class Counsel's litigation costs and

expenses, in the amount of $3,475.52," and it directed that the named

plaintiff "Charles T. Johnson will receive $6,000 as acknowledgement of his role in prosecuting this case on behalf of the Class Members." DE53:5(Final Order).  It closed stating that "Class Counsel's request for an award of attorneys' fees of 30 percent of the Settlement Fund is approved," and that "Plaintiff's request for an incentive award of $6,000 is approved."  DE53:6-7 (Final Order).

The district court offered no findings of fact, no conclusions of law, and no reasons at all for the attorneys' fee award.   *See id.*  Neither did the Final Order include any explanation for how the court had calculated Johnson's $6,000 bonus for serving as named plaintiff.  *See id.*

Ms. Dickenson filed her notice of appeal on June 3, 2018.  DE54. This Court docketed the appeal on June 8, 2018.  DE55.

C.    Standard of Review

Orders certifying a class action, approving its settlement, or awarding attorneys' fees, ordinarily are reviewed for abuse of discretion. *See Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1264-65 (11th Cir. 2009)(class certification); *Bivins v. Wrap It Up, Inc.,* 548 F.3d 1348, 1351-52 (11th Cir. 2008)(attorneys' fees); *ACLU of Georgia v. Barnes,*

168 F.3d 423, 427 (11th Cir. 1999)(attorneys' fees); *Holmes v.*

*Continental Can Co.,* 706 F.2d 1144, 1147-48 (11th Cir.

1983)(settlement approval).

> A district court abuses its discretion if it applies an incorrect
> legal standard, follows improper procedures in making the
> determination, or makes findings of fact that are clearly
> erroneous.  A district court may also abuse its discretion by
> applying the law in an unreasonable or incorrect manner.

*Vega,* 564 F.3d at 1265 (citation omitted).

For this Court to exercise meaningful appellate review the district

court must provide an adequate explanation of the reasons for its

discretionary rulings – and will be reversed if it does not.  *See, e.g., Lee*

*v. Southern Homes Sites Corp.,* 429 F.2d 290, 296 (5th Cir.

1970)(reversing and remanding because "it is impossible to review the

soundness of such an exercise of discretion unless the trial court

indicates in its findings of fact the grounds upon which it exercised its

discretion").

"The Court should examine the settlement in light of the

objections raised and set forth a reasoned response to the objections

including findings of fact and conclusions of law necessary to support

the response."  *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).

"It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination. ... Unless such an explanation is given, adequate appellate review is not feasible ...." *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 558 (2010). "'To survive appellate review, the district court must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections.'" *Allen v. Bedolla,* 787 F.3d 1218, 1223-24 (9th Cir. 2015)(citation omitted).

Several of Dickenson's contentions on appeal present questions of law accordingly subject to de novo review: "Interpreting the Federal Rules of Civil Procedure presents a question of law subject to de novo review." *Burns v. Lawther,* 53 F.3d 1237, 1240 (11th Cir. 1995). Thus, whether a district court violates Rule 23(h) and fundamental due-process norms by requiring class members to file objections before Class Counsel file the final motions for settlement approval and attorneys' fees presents a question of law reviewed de novo. *See Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008)("'[W]hether a particular class action notice program satisfies the requirements of Fed.R.Civ.P. 23 and the Due Process Clause is a legal determination we review de novo.'

Whether courts may compensate a named plaintiff for personal services rendered in recovering a common fund for the benefit of a larger class, or whether "the allowance for these purposes was illegally made," *Greenough,* 105 U.S. at 538, similarly presents a question of law subject to de novo review.

So does the question of whether Rule 23 permits a class representative to obtain special preferential treatment. *Silvikous v. Pharaon,* 54 F.3d 697, 700 (11th Cir. 1995)("We review the district court's interpretation of the Federal Rules of Civil Procedure *de novo.*").

The proper standards for awarding attorneys' fees under Rule 23 are similarly subject to *de novo* review. *See Bivins,* 548 F.3d at 1351; *ACLU of Georgia,* 168 F.3d at 427.

## IV.  SUMMARY OF ARGUMENT

The district court erred by requiring class members to file any objections they might have before class counsel had filed the motions, seeking final settlement approval and an award of attorneys' fees, that the class members' objections would challenge.  The Ninth Circuit in *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 993-95 (9th Cir. 2010), and the Seventh Circuit in *Redman v. RadioShack,* 768 F.3d 622,

637-38 (7th Cir. 2014), both have held Rule 23(h) mandates that papers relating to attorneys' fee applications be made available **before** the deadline for filing objections. *Accord Allen v. Bedolla,* 787 F.3d 1218, 1225-26 (9th Cir. 2015). That conclusion also is compelled by fundamental constitutional due process, *see Lawler v. Johnson*, __So. 3d.__, 2017 WL 4707517, at *7-*9 (Ala. Oct. 20, 2017), which the proceedings in this case violated. *Infra* at 21-27.

The district court further erred by failing to provide any reasoned analysis or explanation of its rulings approving the settlement, awarding attorneys' fees, paying the named plaintiff a $6,000 bounty, or even for overruling Dickenson's objections. Although the district court has considerable discretion in evaluating and approving a settlement or awarding reasonable attorneys' fees, it must explain the reasons for its exercise of discretion. This the district court utterly failed to do – requiring reversal. *Infra at* 27-46.

The district court's award of a $6,000 bonus to named plaintiff Johnson to compensate him for services rendered as class representative, DE53:5¶B, exceeded the district court's discretion as a matter of law. The Supreme Court's formative common-fund

precedents flatly condemn such a payment as "illegally made." *Trustees v. Greenough,* 105 U.S. 527, 537-38 (1882)*; accord Central RR & Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885). *Infra* at 46. Nor may justification for such payments be found in Rule 23, which in fact prohibits special bonuses for class representatives. *Infra* at 47-54.

Even assuming that such payments might in some circumstances be permissible, Johnson failed to demonstrate how his efforts in the case could have warranted a $6,000 bonus. *See Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 311 (6th Cir. 2016). *Infra* at 54-58.

Although the district court never indicated the legal standards on which it relied, this Court should clarify the proper standards for common-fund fee awards to be applied on remand. Particularly, it should clarify that the so-called "*Johnson* factors" from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), disapproved by the Supreme Court in *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551-52 (2010), no longer control the award of fees to class counsel. Counsel are best compensated by the lodestar approach of

*Perdue,* which is presumptively sufficient to provide lawyers with incentives to litigate statutory claims. *Infra* at 59-60.

## V.    ARGUMENT

### A.    The District Court Violated Procedures Mandated by Rule 23(h) and Due Process by Making Objections Due before the Motions for an Award of Attorneys' Fees were Filed

By the district court's December 4, 2017 Preliminary Approval Order, Class Counsel's motion for attorneys' fees and the motion for final settlement approval upon which it was based were not due until April 6, 2018, which was eighteen days ***after*** the March 19, 2018, deadline for filing objections to the proposed settlement and fee application. DE38:8.

This clearly violated the requirement of Rule 23(h) that motions for attorneys' fees "must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner," so that "[a] class member, or a party from whom payment is sought, may object to the motion." Fed.R.Civ.P. 23(h)(1), (2). It also violated fundamental due process to place the deadline for filing objections before the final settlement-approval motion and attorneys' fee motion had even been filed. *See* U.S. Const. Amend. V; *Eisen v. Carlisle &*

- 21 -

*Jacquelin,* 417 U.S. 156, 174-75 (1974)("notice and an opportunity to be heard [are] fundamental requisites of the constitutional guarantee of procedural due process"); *Hansberry v. Lee,* 311 U.S. 32, 40 (1940)("notice and opportunity to be heard are requisite to the due process which the Constitution prescribes"); *Lawler*, 2017 WL 4707517, at *7-*9. Class members cannot meaningfully respond and object to motions that have yet to be filed. *See Lawler,* 2017 WL 4707517, at *7-*9.

Rule 23(h) thus requires class counsel to file their fee motion – and direct it to interested class members – well before the time to opt-out or object. The 2003 Advisory Committee Note to Rule 23(h) emphasizes: "In setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." *See Mercury Interactive,* 618 F.3d at 994. The district court in this case, however, ignored Rule 23(h)'s mandate, and instead required class members to file objections to the motion for class counsel's attorneys' fees before the motion itself would be filed.

The Ninth Circuit and the Seventh Circuit both have reversed fee awards entered under similar circumstances.  In *Mercury Interactive* the Ninth Circuit held:

> Allowing class members an opportunity thoroughly to examine counsel's fee motion ... is essential for the protection of the rights of class members.  It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.

*Mercury Interactive,* 618 F.3d at 994; *accord Allen,* 787 F.3d at 1225-26.

Following *Mercury Interactive* the Seventh Circuit in *Redman* similarly held that Rule 23(h)

> requires that a claim for attorneys' fees in a class action be made by motion, and "notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  Class counsel did not file the attorneys' fee motion until after the deadline set by the court for objections to the settlement had expired.  That violated the rule.

*Redman,* 768 F.3d at 638-39.  "There was no excuse for permitting so irregular, indeed unlawful, a procedure."  *Id.*; *accord In re National Football League Players Concussion Injury Litig.,* 821 F.3d 410, 446 (3d Cir. 2016)("We have little trouble agreeing that Rule 23(h) is violated in those circumstances.")(dictum).  Alabama's Supreme Court, moreover, has held that fundamental due process demands compliance with the

rule of *Mercury* and *Redman,* even in the absence of a state-law analog to Rule 23(h).   *Lawler*, 2017 WL 4707517, at \*7-\*9 (reversing percent-of-fund common-fund attorneys' fee award where objections were due before the fee application was filed and class counsel concealed their lodestar).

The district court offered no reason for deviating from the requirements of Rule 23(h) and fundamental due process in this case.  It simply ignored Dickenson's objection that its procedures were unlawful.

Dickenson filed her objection within the deadline set by the court, and before class counsel had filed motions for final settlement approval and an award of attorneys' fees.  *See* DE42 (Dickenson objection filed 03/19/2018).  She thus was required to, and did, file her objection before class counsel filed the motions to which the objection related.  *See* DE43 (motion for final approval filed 04/06/2018); DE44 (motion for attorneys' fees, costs, expenses and an incentive award filed 04/06/2018).  She had no way of knowing what rationale or record class counsel would offer as a basis for their motion, let alone any way to frame an objection responsive to their application.

This was a clear violation of Rule 23(h).  Here, as in *Redman*: "There was no excuse for permitting so irregular, indeed unlawful, a procedure."  *Redman,* 768 F.3d at 638-39.  There is but one effective remedy to protect the class's rights:  "Upon remand, the district court must give the entire class – and not just the Objectors-Appellants here – the opportunity to review class counsel's completed fee motion and to submit objections if they so choose."  *Allen,* 787 F.3d at 1226.

Nor can the error be dismissed as harmless in a case in which the district court offered no explanation for its fee award, and class counsel withheld from both the class and the court the most basic information concerning their work on the case – suppressing even their hourly rates and the number of hours they had devoted to the matter.

In this case, just as in *Lawler,* "the class was never provided such information.  Class counsel stated in its attorney-fee application that the amount of time it expended on this case was irrelevant or of only minor importance," given Alabama's appellate precedent holding that "'in a class action where the plaintiff class prevails and the lawyer's efforts result in a recovery of a fund, by way of settlement or trial, a reasonable attorney fee should be determined as a percentage of the

amount agreed upon in settlement or recovered at trial.'" *Lawler,* 2017 WL 4707517, at *10 (Ala. Oct. 20, 2017)(quoting *Edelman & Combs v. Law,* 663 So.2d 957, 959 (Ala. 1995)).

Following this Court's decision in *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 773 (11th Cir.1991), Alabama's Supreme Court embraced percentage-of-fund fee awards, observing that "strict reliance on 'the time consumed' factor in a common fund case could encourage and reward protracted litigation." *Edelman*, 663 So.2d at 960. But that does not mean that the attorneys' time expended, and their lodestar, are irrelevant to the award of fees, much less that class counsel may conceal such information from the class whose interests they purport to represent. Far from it:

> We hold that the lawyers representing the plaintiff class in this case are entitled to a reasonable percentage of the amount of the settlement. In determining that percentage, the trial court should consider all relevant factors, including the number of hours expended on behalf of the class.

*Lawler,* 2017 WL 4707517, at *11 (quoting *Edelman,* 663 So.2d at 961).

The decision below must be reversed, and proper notice must be given to the Class.

B.    The District Court Provided Insufficient Explanation for Its Rulings to Permit Meaningful Appellate Review

The district court provided no analysis or legal basis for approving a settlement capturing less than two percent of the TCPA claims' value, for its award of 30 percent of the Settlement Fund to class counsel, or for awarding a $6,000 bonus to the named plaintiff.  It ignored Rule 23(h)(3)'s command that in awarding class-action attorneys' fees it "must find the facts and state its legal conclusions."  Fed.R.Civ.P. 23(h)(3).  Neither did it provide any reasons for overruling Dickenson's objections.  The district court's failure to make the required findings and to state the reasons for its rulings requires reversal and remand.

1.    The District Court Offered No Meaningful Explanation for Approving the Settlement

The district court acts in a quasi-fiduciary capacity when it certifies a class and approves a settlement, *United States v. City of Miami,* 614 F.2d 1322, 1330-31 (5th Cir. 1980), and thus must provide a reasoned explanation for its rulings.  As Dickenson argued below:

> The Court must "undertake an analysis of the facts and the law relevant to the proposed compromise" and "support [its] conclusions by memorandum opinion or otherwise in the record." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977).

DE42:2 (Objection).

"Because of the potential for a collusive settlement, a sellout of a highly meritorious claim, or a settlement that ignores the interests of minority class members, the district judge has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate' and that the fee awarded plaintiffs' counsel is entirely appropriate." *Piambino v. Bailey,* 757 F.2d 1112, 1139 (11th Cir. 1985)("*Piambino II*"). "A 'mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law' will not suffice." *Id.* n.68 (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977)); *see In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir. April 3, 1981)(Tjoflat, J.).

In approving the $1.432 million Settlement, representing less than two percent of the low-end value of the TCPA claims asserted, however, the district court offered only a boilerplate recitation of factors it was required to discuss and meaningfully evaluate. This was the entirety of its "analysis" approving the Settlement:

> The Court finds that the settlement of this action, on the terms and conditions set forth in the Settlement Agreement, is in all respects fundamentally fair, reasonable,

adequate, and in the best interest of the class members, when considering, in their totality, the following factors: (1) the absence of any fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the Plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *See Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 [n.6] (11th Cir. 1994).

DE53:4 (Final Judgment).

This was a boilerplate list of factors rather than a reasoned analysis of any of them. In *Leverso* by contrast "[t]he district court thoroughly addressed [the] six factors and ruled that each weighed in favor of settlement." *Leverso,* 18 F.3d at 1530-31. Here, the district court merely listed the six factors, but provided no analysis or findings concerning any of them. This Court's review "must determine whether the district court's approval was 'based on adequate and careful analysis of 'the facts of the case in relation to the relevant principles of applicable law.''" *Id.* at 1531. A boilerplate recitation, without discussion of the factors listed, does not provide this Court with a basis for affirming. *See id.; accord Piambino II*, 757 F.2d at 1139 n.68;

- 29 -

*Cotton,* 559 F.2d at1330; *see also In re Target Corp. Customer Data Sec. Breach Litig.,* 847 F.3d 608, 612 (8th Cir. 2017)(reversing certification of a settlement class that "replaces analysis of the certification prerequisites with a recitation of Rule 23 and a conclusion that certification is proper").

The district court's boilerplate recitation in this case is clearly insufficient.  Utterly absent was any response to Dickenson's objection that determining the range of reasonableness for the settlement must include considering the best case for the plaintiff class.  *Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 283 (7th Cir. 2002); *see* Dickenson Objection, DE42:7 & n.6.  To evaluate a settlement's adequacy, moreover, "'the district court should begin by 'quantify[ing] the net expected value of continued litigation to the class, since a settlement for less than that value would not be adequate.'" *Synfuel Techs v. DHL Express (USA),* 463 F.3d 646, 653 (7th Cir. 2006)(quoting *Reynolds,* 288 F.3d at 284-85).

Completely missing from the district court's Order was any explanation for why a recovery coming to less than two percent of the ***low-end*** range of liability should be approved as fair, reasonable, and

adequate, when the plaintiff's counsel conceded that "our case is strong," DE58:8 (transcript), and the court entered no finding that the defendant was incapable of paying a far larger amount.

Addressing approval of a settlement in bankruptcy, the Supreme Court has held: "It is essential … that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law." *Protective Committee v. Anderson,* 390 U.S. 414, 424 (1968).   Orders approving a settlement cannot be sustained when, as here, "there is no explanation of how the strengths and weaknesses of the … causes of action were evaluated or upon what grounds it was concluded that a settlement … was 'fair and equitable.'" *Id.* This *Protective Committee* standard applies to orders approving class-action settlements. *See Piambino v. Bailey,* 757 F.2d 1112, 1139 n.68 (11th Cir. 1985)(*Piambino II*); *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977); *accord Plummer v. Chemical Bank,* 668 F.2d 654, 659 (2d Cir. 1982); *Girsh v. Jepson,* 521 F.2d 153, 159 (3d Cir. 1975); *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972).

Thus, although district courts possess considerable discretion in ruling on class certification and settlement approval, "in order to provide for meaningful appellate review, a district court must explain its reason for approving a class action settlement agreement," and "the use of 'mere boilerplate' language will not suffice." *Eichenholtz v. Brennan,* 52 F.3d 478, 488 (3d Cir. 1995)(quoting *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 804 (3d Cir. 1974)). Rather, "the district court must clearly set forth in the record its reasons for approving the settlement in order to make meaningful appellate review possible." *Armstrong v. Board of School Directors,* 616 F.2d 305, 315 (7th Cir. 1974), *overruled in part on other grounds, Felzen v. CalPERS,* 1314 F.3d 873, 875 (7th Cir. 1998).

Indeed, as the Fifth Circuit explained in *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983),

> the court, upon consideration of a proposed settlement, must state its reasons for approving it and should examine a proposed settlement in light of the objections raised to it, and set forth with sufficient detail a reasoned response to them, including supportive findings of fact and conclusions of law as may be necessary, so that an appellate court, in the event of an appeal, will have a basis for conducting a meaningful review of the exercise of the district court's discretion.

*Maher,* 714 F.3d at 455 (following *Cotton v. Hinton,* 559 F.2d 1326, 1330-31 (5th Cir. 1977)).

This the district court failed to do. Had it attempted to do so, Dickenson submits, the district court could not have sustained the settlement as fair, reasonable, and adequate. Extraordinarily low settlements can sometimes be explained by extraordinarily weak claims, since a court evaluating the settlement's adequacy "must ask whether the value of relief in the aggregate is a reasonable approximation of the value of plaintiffs' claim." *In re Mexico Money Transfer Litig.,* 267 F.3d 743, 748 (7th Cir. 2001). But Johnson cannot justify the miniscule recovery, given his lawyer's concession at the hearing: "We believe our case is strong." Tr. May 7, 2018, DE58 at 8:1-2. There was, no showing that Johnson's TCPA claims bordered on frivolous, or that NPAS was financially unable to pay a far more substantial judgment than the $1.432 million settlement, sufficient to justify releasing class members' claims for less than two percent of the low-end of the potential damages at stake.

*Leverso* required the district court to evaluate and make findings on "the probability of the Plaintiff's success on the merits" and "the

range of possible recovery." *Leverso,* 18 F.3d at 1530 n.6.  But the district court made none of the findings that *Leverso* required.  Its judgment sustaining the Settlement must be reversed.

> 2.    The District Court Offered No Meaningful Explanation for Awarding 30% of the Fund as Attorneys' Fees

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees."  But it clearly mandates that in awarding attorneys' fees the court "must find the facts and state its legal conclusions."  Fed.R.Civ.P. 23(h)(3).  "The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."  Fed.R.Civ.P. 52(a)(1).  But they must be stated.

In this case, however, the district court offered no findings of fact or conclusions of law of any sort concerning the attorneys' fee award.  It provided no meaningful explanation for awarding 30% of the settlement fund as attorneys' fees, let alone for awarding the named plaintiff a special bonus of $6,000.  The district court did not even find that the sums sought were reasonable.  This is all that its Final Order says about these payments:

The following are to be deducted from the Settlement Fund before any other distributions are made:

    a. The costs and expenses for the administration of the settlement and class notice, including expenses necessary to identify class members;

    b. Plaintiff's attorneys' fees, in the amount of 30 percent of the Settlement Fund, and the reimbursement of Class Counsel's litigation costs and expenses, in the amount of $3,475.52; and

    c. The Incentive Payment to Plaintiff. Charles T. Johnson will receive $6,000 as acknowledgment of his role in prosecuting this case on behalf of the Class Members.

DE53:5¶B.

Although this Court holds that "the amount of any fee must be determined upon the facts of each case," *Camden I,* 946 F.2d at 774, the district court here said nothing about how the facts of this case justified the 30% attorneys' fee award. "'The district court "has great latitude in formulating attorney's fees awards subject only to the necessity of explaining its reasoning so that we can undertake our review."'" *Faught v. American Home Shield Corp.,* 668 F.3d 1233, 1242 (11th Cir. 2011)(quoting *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1293 (11th Cir.1999)(quoting *McKenzie v. Cooper, Levins & Pastko, Inc.,* 990 F.2d 1183, 1184 (11th Cir.1993))). But the district court "must explain

its reasoning in determining a reasonable attorney's fee to give this court an adequate and informed basis for review." *Gilmere v. City of Atlanta,* 931 F.2d 811, 814 (11th Cir. 1991).

The failure to make the required findings or to provide any meaningful analysis is reversible error.   When awarding attorneys' fees, a district court must provide "a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart,* 461 U.S. 424 (1983). It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination.... Unless such an explanation is given, adequate appellate review is not feasible *...." Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 558 (2010); *see Gray ex rel. Alexander v. Bostic,* 613 F.3d 1035, 1039-40 (11th Cir. 2010)(quoting *Hensley* and *Perdue*); *accord, e.g., Portillo v. Cunningham,* 872 F.3d 728, 741 (5th Cir. 2017); *Minor v. Comm'r of Soc. Sec.,* 826 F.3d 878, 883 (6th Cir. 2016); *Binta B. ex rel. SA v. Gordon,* 710 F.3d 608, 639-40 (6th Cir. 2013); *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 943-44 (9th Cir. 2011).

The requirement that the district court make express findings and provide a reasoned explanation for all aspects of its fee award is by no

means a recent innovation.  We find it enforced in pre-split decisions of the Fifth Circuit, which are controlling precedents for this Court.  *See, e,g., Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437, 447 (5th Cir. 1977); *Sabala v. Western Gillette, Inc.,* 516 F.2d 1251, 1269 (5th Cir. 1975), *vacated on other grounds,* 431 U.S. 951 (1977).

*Baxter* reversed a fee order entered without adequate explanation: "The silence of the district court prevents us from determining whether there was a proper exercise of discretion in the instant case." *Baxter,* 495 F.2d at 447.  In *Sabala* the "trial court based its award on a finding 'that the amounts … are reasonable under the circumstances in light of the time spent in preparation and litigation of the cause, the complexity of such preparation and litigation, and the novelty of the issues.'"  The Fifth Circuit reversed, holding that "the conclusory language of the trial judge's order effectively prevents any meaningful review of the award made." *Sabala,* 516 F.2d at 1269.

*Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. February 6, 1980)(*Piambino I*), moreover, clearly mandates:  "The court should enter findings of fact and conclusions of law setting out the basis for the fee award and adequately presenting the issue for further appellate

review should this be necessary." *Id.* (quoting *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1021 (5th Cir. 1971)).  By approving an agreed fee award without engaging in its own analysis, however, the *Piambino* district court "abdicated its responsibility to assess the reasonableness of attorneys' fees proposed under a settlement of a class action, and its approval of the settlement must be reversed on this ground alone."  *Id.* at 1328.  This Court reiterated the point in a subsequent appeal requiring Lead Counsel to disgorge the fee award.  *Piambino v. Bailey*, 757 F.2d 1112, 1140 (11th Cir. 1985)(*Piambino II*)("Such perfunctory approval … standing alone, was sufficient to vitiate the settlement.").

The Fifth Circuit naturally continues to follow these pre-split decisions, which remain controlling precedents in the Fifth Circuit as well as in the Eleventh.  *See, e.g, In re High Sulphur Content Gasoline Prods. Litig.,* 517 F.3d 220, 228 (5th Cir. 2008)(following *Piambino I*'s "holding that by summarily approving attorneys' fees presented in an unopposed settlement agreement, the district court 'abdicated its responsibility to assess the reasonableness of the attorneys' fees proposed under a settlement of a class action, and its approval of the

settlement must be reversed on this ground alone'")(quoting *Piambino I,* 610 F.2d at 849); *Strong v. BellSouth Telecommunications, Inc.,* 137 F.3d 844, 849 (5th Cir. 1998)(same); *see also Centerpoint Energy Houston v. Harris County Toll Road Auth.,* 436 F.3d 541, 550-51 (5th Cir. 2006)("[a]lthough an award of attorney's fees … is committed to the discretion of the trial court and can only be reversed for an abuse of discretion, the trial court must give reasons for its decisions . . .; otherwise we cannot exercise meaningful review'")(quoting *Schwarz v. Folloder,* 767 F.2d 125, 133 (5th Cir. 1985)).

Other circuits agree. *See, e.g., Staton v. Boeing Co.,* 327 F.3d 938, 965 (9th Cir. 2003)(following *Piambino I*); *Jordan v. Mark IV Hair Styles, Inc.,* 806 F.2d 695, 697 (6th Cir. 1986)(following *Piambino I*). "Without a reasoned and documented explication of the rationale for approving or denying a particular fee award, it is difficult, if not impossible, for an appellate court to review such an award for abuse of discretion." *Gunter v. Ridgewood Energy Corp,* 223 F.3d 190, 192 (3d Cir. 2000); *see In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 733-34 (3d Cir. 2001).

Requiring a reasoned explanation is critical both because it permits meaningful appellate review of the fee award, and also because the district judge is likely to reach a different conclusion when required to state the reasons for its award.   In *Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323 (9th Cir. 1999), for example, the district court awarded class counsel attorneys' fees of roughly $3 million, but the Ninth Circuit "vacated the attorneys' fees award and remanded, because the district court had not articulated adequately its reasons for approving the fee." *Id.* at 1325.  It directed the district court to "articulate its reasoning." *Id.* at 1328.  Merely being required to explain its fee award had significant consequences:  "On remand, the district court cut the fee from almost $3 million to a little over $1 million." *Id.* at 1325.

A reasoned explanation should be required in this case too.  In awarding attorneys' fees, "the court is to act 'as a fiduciary who must serve as a guardian of the rights of absent class members.'"[1]  The

---

[1] *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 47 (2d Cir. 2000) (citation omitted); *see McDaniel v. County of Schenectady,* 595 F.3d 411, 419 (2d Cir. 2010); *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975).

Advisory Committee Notes to Rule 23(h) emphasize: "Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process." Fed.R.Civ.P. 23(h), Advisory Committee Notes to 2003 amendment.

This case bears striking resemblance to *Powers v. Eichen,* 229 F.3d 1249, 1258 (9th Cir. 2000), where the Ninth Circuit was compelled to reverse a district court for failing to clearly explain the reasons underlying its 30% common-fund fee award:

> The written order of the court, issued three days after the hearing, did little to clarify how the court decided to award a fee of thirty percent. After announcing the fee award, the court simply stated that "the amount ... is fair and reasonable under the 'percentage of recovery' method."

> Although we recognize the district court's discretion in this area, we conclude that in this case the fee award was not sufficiently explained. Many of the factors discussed at the hearing may have supported the fee award, but the district court never stated the grounds on which it ultimately relied. The court never explained — either at the hearing or in the written order — exactly why it chose to exceed the benchmark and award a thirty percent fee. As a result, we cannot conduct meaningful appellate review. Because the district court failed to specify adequately the basis for its decision, it abused its discretion.

*Powers,* 229 F.3d at 1257-58.

- 41 -

Here, of course, the district court's conclusory order, issued the same day as the hearing, offered ***absolutely nothing*** to explain its 30% fee award.  Reversal is required here, as in *Zucker* and *Powers*.

The case is analogous, as well, to *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 196-97 (3d Cir. 2000), where the Third Circuit reversed a fee order that recited the relevant standards, but failed to engage in meaningful analysis of how they applied to the case under review:

> First, the Court's statements … that it reviewed the record and applied the relevant case law are an *ipse dixit* insofar as they are unsupported by careful analysis explicated in written opinions or rulings from the bench. Trusting the verity of such statements, they nonetheless give us little, as a reviewing court, with which to work. Unfortunately, a large part of the District Court's analysis consisted of such statements, which in our view, do not constitute sufficiently "articulate[d] reasons for the selection of a given [fee] percentage . . . ."  MANUAL FOR COMPLEX LITIGATION, *supra,* §24.121, at 206.

> Second, and more importantly, when the Court did reference the fee-award factors in its opinions, it neither engaged those factors nor explained its reasoning.  In the entirety of its analysis of the issue in its first opinion, the Court wrote: "[1] The nature of this litigation, [2] its resolution at this stage without the necessity of trial, [3] the nature of the settlement, and [4] its value, convince the court that it would place a reasonable burden on the class to award attorneys' fees of 18% of the Settlement Fund, or $1,700,000."

*Gunter,* 223 F.3d at 196-97; *see In re Cendant PRIDES Litig.,* 243 F.3d 722, 733 (3d Cir. 2001).

Here, the district court offered far less to explain its 30% fee award. That requires reversal, for to survive appellate review, the fee order must present a meaningful explanation of the award, which is to say, "a 'rendering of reasons in support of a judgment – rather than a mere conclusory statement.'" *Pickett v. Sheridan Health Care Center,* 664 F.3d 632, 651 (7th Cir. 2011)(quoting *Sottoriva v. Claps,* 617 F.3d 971, 976 (7th Cir. 2010)). It simply is not enough to merely pick a particular percentage figure, without explaining why that percentage was chosen. *See Binta B.,* 710 F.3d at 639-40; *Powers,* 229 F.3d at 1257-58; *Gunter*, 223 F.3d at 196-97; *In re WPPSS,* 19 F.3d 1291, 1298 (9th Cir. 1994)("courts cannot rationally apply any particular percentage— whether 13.6 percent, 25 percent or any other number—in the abstract, without reference to all the circumstances of the case").

Nor may the district court rest its award upon a "benchmark" percentage as a "tempting substitute for the searching assessment that should properly be performed in each case." *Goldberger,* 209 F.3d at 52. This Court held in *Camden I* that:

> There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee *because the amount of any fee must be determined upon the facts of each case.* "[I]ndividualization in the exercise of a discretionary power [for fee awards] will alone retain equity as a living system and save it from sterility."

*Camden I,* 946 F.2d at 774 (emphasis added)(quoting *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 167 (1939)).  The notion that courts should award fees according to a benchmark in the range of 20-30% conflicts, moreover, with the Supreme Court's equitable-fund precedents, which have slashed unreasonably high 10% fee awards to a more reasonable 5%.  *See Pettus,* 113 U.S. at 746-47; *United States v. Equitable Trust Co.,* 283 U.S. 738, 746-47 (1931).

Here, the district court made no findings and engaged in no analysis at all.  Its 30% fee award cannot stand.

> 3.    The District Court Erred by Failing to Provide a Reasoned Response to Dickenson's Objections

The district court also erred by failing to provide any reasoned response to Dickenson's objections.  This is all it said on the subject: "The Class Members were given an opportunity to object to the settlement.  One Class Members objected to the settlement. The

objection of Jenna Dickenson is OVERRULED."  DE53:5 (Final
Judgment).  That is plainly insufficient.

Controlling pre-split Fifth Circuit precedents hold "the trial court
is to 'examine the settlement in light of the objections raised ***and set
forth on the record a reasoned response to the objections
including findings of fact and conclusions of law necessary to
support the response.***'"  *Kincade v. General Tire & Rubber Co.,* 635
F.2d 501, 507 (5th Cir. Jan. 30, 1981)(emphasis added)(quoting *Cotton
v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)(following *Mandujano v.
Basic Vegetable Prods., Inc.,* 541 F.2d 832, 836 (9th Cir. 1976)); *accord
In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 213 (5th Cir.
April 3, 1981)(pre-split Fifth Circuit decision, following *Cotton*); *see also
Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983)(post-split
Fifth Circuit decision, following pre-split *Cotton*).

The Ninth Circuit concurs: "'To survive appellate review, the
district court must show it has explored comprehensively all factors,
and must give a reasoned response to all non-frivolous objections.'"
*Allen,* 787 F.3d at 1223-24 (quoting *Dennis v. Kellogg,* 697 F.3d 858, 864
(9th Cir. 2012)); *accord, e.g., Saunders v. Naval Air Rework Facility,* 608

F.2d 1308, 1311-12 (9th Cir. 1979)(reversing and remanding because district court failed to provide "a reasoned response to the appellants' objections"); *Mandujano,* 541 F.2d at 836 (the trial court must "set forth on the record a reasoned response" to all substantial objections; "[s]uch findings of fact and conclusions of law as may be necessary to support the response must also appear on the record.").

Other circuits similarly require a reasoned response to objections. In *Shane Group, Inc. v. Blue Cross Blue Shield,* 825 F.3d 299, 311 (6th Cir. 2016), for example, the Sixth Circuit observed that "the district court did not respond to at least one of the Varnum Group's objections, namely that the claims process is unduly burdensome. On remand, the court should respond to that objection along with any others that are presented."

In this case, however, neither the required responses to Dickenson's objections, nor the supporting findings of fact and conclusions of law demanded by *Cotton,* by *Kincaid,* and by *Corrugated Container*, appear anywhere in the record. The decision below amounts to a gross deviation from precedent and a clear abuse of discretion.

C.    The Named Plaintiff's $6,000 Incentive Award Is Unlawful
       and Unsupported

The district court awarded plaintiff Charles T. Johnson $6,000 as

an "incentive award" to compensate him for personal services rendered

as class representative: "Charles T. Johnson will receive $6,000 as

acknowledgment of his role in prosecuting this case on behalf of the

Class Members." DE53:7.  Dickenson duly objected that this award is

proscribed by the Supreme Court's seminal common-fund precedents

and by Rule 23 itself.  DE42:12-15.  She also objected that the request

for such an award produced unacceptable conflict of interest, DE42:13-

14, and that the request was inadequately documented.  DE42:14-15.

D.    *Trustees v. Greenough* and *Central RR & Banking Co. v.*
       *Pettus* Proscribe Incentive Awards for Class Representatives
       in Common-Fund Cases

The Supreme Court's formative decisions establishing the

common-fund doctrine are *Trustees v. Greenough,* 105 U.S. 527, 538

(1882)*,* and *Central RR & Banking Co. v. Pettus,* 113 U.S. 116, 122

(1885).  *See Boeing v. Van Gemert,* 444 U.S. 472, 478 (1980)(citing

*Greenough* and *Pettus*); *see also Camden I Condominium Ass'n v.*

*Dunkle,* 946 F.2d 768, 771, 773 (11th Cir. 1991)(same).  Both cases hold

that a litigant whose efforts procure a common fund may recover the

expenses reasonably incurred, including reasonable attorneys' fees, ***but not*** incentive awards for services rendered, which *Greenough* condemns as "decidedly objectionable." *Greenough,* 105 U.S. at 537. "The reasons which apply to [the named plaintiff's] expenditures incurred in carrying on the suit, and reclaiming the property subject to the trust, do not apply to his personal services and private expenses." *Id.* at 537. "'It would present,' said Mr. Justice Bradley, speaking for the court, 'too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interests of creditors, and that, perhaps, only to a small amount, if they could calculate upon the allowance of a salary for their time and having all their private expenses paid.'" *Pettus,* 113 U.S. at 122 (quoting *Greenough,* 105 U.S. at 537-38).

However it might be designated, whether as an "incentive award," "incentive bonus," "case-contribution award," "service award," or otherwise, *Greenough* holds: "Such an allowance has neither reason nor authority for its support." *Greenough,* 105 U.S. at 538. The $6,000 payment to Mr. Johnson for services he supposedly rendered as class

representative, like the allowance for the named plaintiff's personal services to the class in *Greenough,* "was illegally made."[2]

Johnson will say such awards are routine. But "incentive awards" are a relatively recent innovation of lower courts, developed in direct contravention of *Greenough* and *Pettus.* As late as 1974, Harvard Law Professor John P. Dawson could find "no case that uses the *Greenough* doctrine to reimburse the litigants themselves for their own time, travel, or personal expenses, however necessary their efforts may have been to litigation that conferred gains on others." John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 HARV. L. REV. 1597, 1602 (1974). "Beginning around 1990," however, "awards for representative plaintiffs began to find readier acceptance," orders

---

[2] *Id.*; *see also, e.g., Zucker v. Westinghouse Electric,* 374 F.3d 221, 226 (3d Cir. 2004)(following *Greenough*), *aff'g In re Westinghouse Sec. Litig.,* 219 F.Supp.2d 657, 660-61 (W.D. Pa. 2002)(same); *Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1207-08 (6th Cir. 1992) (applying *Greenough's* distinction between litigation expenses on the one hand, and "personal services and private expenses," on the other); *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939)(under *Greenough* and *Pettus* claimants interested in the fund itself can receive "no compensation for personal services"); *Gortat v. Capala Brothers, Inc.,* 949 F.Supp.2d 374, 379 (E.D.N.Y. 2013)(following *Greenough*).

"approving incentive awards proliferated," and within a decade were thought "'routine'" in some district courts. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 U.C.L.A. L. Rev. 1303, 1310-11 & n.21 (2006). The Seventh Circuit arguably approved of them in *In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 571-72 (7th Cir. 1992)(dictum), overlooking the Supreme Court's "seemingly categorical rejection of recovery for the plaintiff's personal expenses." ALAN HIRSCH & DIANE SHEEHEY, AWARDING ATTORNEYS' FEES AND MANAGING FEE LITIGATION 80 (Federal Judicial Center, 2d ed. 2005).

Some courts have joined the Seventh Circuit in endorsing such awards, none of them acknowledging the stark conflict with *Greenough* and *Pettus. See, e.g., Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 333 n.65 (3d Cir. 2010); *Staton v. Boeing Co.,* 327 F.3d 938, 975-77 (9th Cir. 2003). Others have deemed the issue an open question. *See, e.g., Bais Yaakov of Spring Valley v. Act, Inc.,* 798 F.3d 46, 50 (1st Cir. 2015)("this circuit has never ruled on when, if ever, such awards are valid").

This Court has not approved of such awards, and it should not.
*Greenough* and *Pettus* are clear.  Where, as here, a decision of the
Supreme Court "has direct application," it properly controls.  *Rodriguez*
*de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484 (1989).
Even if the high-court precedent "appears to rest on reasons rejected in
some other line of decisions, the Court of Appeals should follow the case
which directly controls, leaving to [the Supreme] Court the prerogative
of overruling its own decisions."  *Id.*; *accord, e.g., Bosse v. Oklahoma,*
137 S.Ct. 1, 2 (2016); *United States v. Hatter,* 532 U.S. 557, 567 (2001);
*see generally* BRYAN A. GARNER, *ET AL.*, THE LAW OF JUDICIAL PRECEDENT
28-33 (2016).

Applying the common-fund doctrine of *Greenough* and *Pettus,* the
$6,000 payment to Mr. Johnson "was illegally made." *Greenough,* 105
U.S. at 538.

> 1.    Johnson's $6,000 Incentive Bonus is Contrary to Rule
>        23 Principles Prohibiting Special Benefits for Class
>        Representatives

Mr. Johnson's $6,000 bounty also violates fundamental Rule 23
principles.  "As the Fourth Circuit stated in *Flinn v. FMC Corp.,* 528
F.2d 1169, 1176 (4th Cir. 1975), by choosing to bring their action as a

class action, the named plaintiffs 'disclaimed any right to a preferred position in the settlement.'" *Kincade v. General Tire Rubber Co.,* 635 F.2d 501, 506 n.5 (5th Cir. Jan. 30, 1981); *accord, e.g., Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990); *Officers for Justice v. Civil Service Commission of the City and County of San Francisco,* 688 F.2d 615, 632 (9th Cir.1982).

This Court has been notably skeptical of settlement allocations that treat named plaintiffs better than absent class members: "When a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness." *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1147 (11th Cir. 1983). Particularly "careful scrutiny by the court is 'necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members.'" *Id.* at 1147 (quoting *United States v. City of Miami,* 614 F.2d 1322, 1331 (5th Cir. 1980)).

2.  Johnson's $6,000 Bonus for Settling Class Claims for Less than $8.00 Per Class Member Produces a Disabling Conflict of Interest that Casts Doubt on the Adequacy of the Settlement and that Should Preclude Him from Settling on Behalf of the Class

The disparity in this case between Johnson's $6,000 bonus and the relief obtained for the rest of the class – coming to $8 per class member as an initial matter, and then rising to $80 apiece for those who submitted claims because few actually did so – casts doubt on both the adequacy of the Settlement and on Johnson's ability to represent the class's interest.   In this Circuit, "such disparities must be regarded as prima facie evidence that the settlement is unfair to the class, and a heavy burden falls on those who seek approval of such a settlement." *Holmes,* 706 F.2d at 1147, quoting *Plummer v. Chemical Bank*, 91 F.R.D. 434, 442 (S.D.N.Y.1981), aff'd, 668 F.2d 654 (2d Cir.1982).

Johnson did not meet that heavy burden, and did nothing to dispel the presumption of unfairness.  Here, as in *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 311 (6th Cir. 2016), "[c]lass counsel argue[d] in conclusory terms" that incentive payments properly compensate class representatives for their "time spent on the

case."[3] That troubled the Sixth Circuit, which voided $10,000 incentive

bonuses, explaining:

> To ensure that these amounts are not in fact a bounty,
> however, counsel must provide the district court with
> specific documentation—in the manner of attorney time
> sheets—of the time actually spent on the case by each
> recipient of an award. Otherwise the district court has no
> basis for knowing whether the awards are in fact "a
> disincentive for the [named] class members to care about the
> adequacy of relief afforded unnamed class members[.]"

*Shane Group,* 825 F.3d at 311 (quoting *In re Dry Max Pampers Litig.,*

724 F.3d 713, 722 (6th Cir. 2013)).

Johnson, of course, failed to document his time devoted to serving

the class – suggesting the bonus was paid for improper purposes, as a

disincentive to care about the adequacy of relief obtained for the class.

*See id.* Under the circumstances, Johnson's $6,000 "incentive award,"

compared to ordinary class members' recovery, fatally undermines any

contention that he adequately represented the class in procuring a

settlement that obtains so little for the rest of the class.

---

[3] *Plaintiff's Response to Objection of Jenna Dickenson,* DE45 at 15 ("Mr
Johnson expended a considerable amount of time pursuing his claim,
and the claims of the Class.").

In *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 756 (6th Cir. 2013), the Sixth Circuit reversed approval of a settlement of a Fair Debt Collection Practices Act ("FDCPA") class action, under which the defendant

> Midland agreed to pay $5.2 million into a common fund for the benefit of the class. From this fund, class counsel would receive attorney fees of no more than $1.5 million, and the costs of administration. From the remainder of the fund, eligible class members who timely returned a claim form would receive payments of $10.00 each. In fact, however, the response rate was such that each class member would receive $17.38.

*Vassalle,* 708 F.3d at 753. "In addition, the four named plaintiffs were to receive $8,000 collectively," that is to say, $2,000 apiece, as incentive awards. *Id.*

The Sixth Circuit held that "the disparity in the relief afforded under the settlement to the named plaintiffs, on the one hand, and the unnamed class members, on the other hand, made the settlement unfair," so that the district court "abused its discretion in finding that the settlement was fair, reasonable, and adequate." *Vassalle,* 708 F.3d at 755. Where individual class members who submitted claims received $17.38 cash, while the named plaintiffs received incentive awards of $2,000 apiece, the Sixth Circuit concluded that "the named plaintiffs

receive[d] 'preferential treatment,' while the relief provided to the unnamed class members is 'perfunctory.'"  *Id.*  The $2,000 incentive awards amounted to preferential treatment for named plaintiffs that flagged an unfair and inadequate settlement.  *Id.* at 755-56.  Johnson's $6,000 incentive bonus similarly flags an unfair and inadequate settlement.

In the *Dry Max Pampers* diaper-rash class action, moreover, the district court approved incentive awards to each named plaintiff of $1,000 per "affected child" while approving a settlement that gave other class members only injunctive relief.  *Dry Max Pampers,* 724 F.3d at 716.  The Sixth Circuit reversed, observing that "an award of $1000 per child more than compensates the class representatives for any actual damages they might have incurred as a result of buying Dry Max diapers.  And thus, having been promised the award, the class representatives had 'no interest in vigorously prosecuting the [interests of] unnamed class members[.]'" *Id.* at 722 (quoting *Vassalle,* 708 F.3d at 757).  Even if incentive awards might otherwise be permitted, the court warned, "we should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than

- 56 -

whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *Id.* at 723.

Mr. Johnson's $6,000 incentive award so far exceeds the Settlement's recovery of just $8 per class member (which grows at best to $80 because very few submitted claims) that it has wrought "a patent divergence of interests between the named representative[] and the class." *Radcliffe v. Experian Info. Solutions,* 715 F.3d 1157, 1161 (9th Cir.2013); *see also Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 959-60 (9th Cir. 2009); *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).

Johnson and his lawyers provided absolutely nothing to document his or their time on the case, and the district court offered no basis for concluding that the $6,000 it awarded Johnson was reasonable. Not only did Mr. Johnson and his counsel fail to justify his requested "incentive," it appears that they cannot meet the heavy burden required to justify such a disproportionate payment. Class representatives who merely lend their name to an action cannot reasonably demand payment for their services rendered in prosecuting a class action. The

Seventh Circuit denied an incentive bonus in *Continental Illinois,* for example, where a named plaintiff who at least had been deposed nonetheless "failed to prove his entitlement to a fee" based on the "modest services" rendered in obtaining a $45 million settlement. *Continental Illinois,* 962 F.2d at 571-72.

Similarly, in *Montgomery Aetna Plywood, Inc.,* 231 F.3d 399, 410 (7th Cir. 2000):  "While the lead plaintiff was the only named plaintiff, was subjected to a rough deposition, and was portrayed by the Montgomery defendants in an unfavorable light during the litigation, it does not appear that he had to devote an inordinate amount of time to the case or that, as a former employee, he suffered or risked any retaliation by Aetna Plywood.  Accordingly, we conclude that the district court did not abuse its discretion in refusing to grant the lead plaintiff an incentive award."

In this case, it does not appear from the record that Mr. Johnson even sat for a deposition.  There is no basis at all for an incentive award.

Mr. Johnson's award should be vacated as contrary to Rule 23, the Settlement should be set aside as unfair and inadequate, and Johnson should be disqualified from further representing the class.

E.    The Supreme Court's Opinion in *Perdue v. Kenny A* Repudiates Eleventh Circuit Fee Jurisprudence and Presumptively Limits Awards to the Attorneys' Lodestar

The district court's failure to offer any rationale for choosing to award Class Counsel 30% of the Settlement Fund requires reversal. *See supra.* Nonetheless, the standards for common-fund fee awards present a question of law on which this Court's guidance is needed, particularly in light this Court's decision in *Camden I* indicating that common-fund fee awards are properly governed by the twelve-factor test set forth in *Johnson*, 488 F.2d at 717.[4]

The Supreme Court's decision in *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010), clearly repudiates the *Johnson/Camden I* multifactor balancing approach as too subjective to produce rulings subject to meaningful appellate review. *Perdue* directly disparages the method "set out in *Johnson* . . . which listed 12 factors that a court

---

[4] *See* Class Counsel's Motion for Attorneys' Fees, Costs, Expenses, and an Incentive Award, DE44 at 3, ¶I(A)

should consider in determining a reasonable fee" because it "'gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results.'" *Perdue,* 559 U.S. at 551 (quoting *Pennsylvania v. Delaware Valley Citizens Council,* 478 U.S. 546, 563 (1986)(*Delaware Valley I*)).

*Perdue* holds, moreover, that a reasonable fee is one that compensates the attorneys for the hours reasonably worked, at their reasonable hourly rates – i.e., their lodestar. *Id.* at 553-554. That is presumptively adequate compensation for lawyers who win the case, *id.,* and who therefore should not be able to demand further payments. *See Haggart v. Woodley,* 809 F.3d 1336, 1354-59 (Fed. Cir. 2016); *Pierce v. Visteon Corp.,* 791 F.3d 782, 787 (7th Cir. 2015).

If, as *Perdue* holds, attorneys' unenhanced lodestar is adequate compensation for class-action lawyers working on contingency, then a district judge ***acting as a fiduciary to the class*** cannot award class counsel a percentage of the common fund that comes to substantially more than their lodestar.

F.    The District Court Failed to Consider Class Counsel's Time and Hours Devoted to the Case

Assuming *arguendo* that *Camden I* still applies to class counsel's fee request despite the Supreme Court's holding in *Perdue*, the district court should have applied the twelve-factor test set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). It did not. Rather, the district court awarded class counsel 30% of the settlement fund stating simply:

> Class Counsel's request for an award of attorneys' fees of 30 percent of the Settlement Fund is approved.

DE53:6.

That is impermissible. A district court awarding fees under *Camden I* must actually weigh the twelve factors enumerated in *Johnson,* 488 F.2d at 717-19, beginning with "the time and labor required." *Camden I* explains that the twelve factors a district court must consider are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and the length of the professional relationship with the client;

(12) awards in similar cases.

*Camden I,* 946 F.3d at 772 n.3; *see Waters,* 190 F.3d at 1294 & n.5. When weighing these factors, a district court must consider class counsel's actual "hours claimed or spent on a case," which "are a necessary ingredient to be considered." *Johnson,* 488 F.2d at 717. The fact that lawyers seek fees as a percentage of the fund does not relieve them of providing reasonable documentation of the time they actually expended. *See Camden I,* 946 F.3d at 772 n.3 & 775; *Shane Group,* 825 F.3d at 310; *Lawler,* 2017 WL 4707517, at *10-*11. As this Court explained in *Waters,* "while we have decided in this circuit that a lodestar calculation is not proper" as the single determinant for

attorneys' fees "in common fund cases, we may refer to that figure for comparison." *Waters,* 190 F.3d at 1298.

Indeed, the first consideration under *Camden I* and *Johnson* is:

(1) *The time and labor required.*  Although hours claimed or spent on a case should not be the sole basis for determining a fee . . . they are a necessary ingredient to be considered. The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities.

*Johnson,* 488 F.2d at 717.  But the district court here could not possibly consider the "time and labor required," let alone evaluate the "hours claimed or spent" and "weigh the hours claimed," *id.*, as required by *Camden I* and *Johnson* because class counsel refused to say how many hours they put into the case.

Here the district court did not, and indeed, could not conduct the analysis set forth in *Johnson* and *Waters* because class counsel provided no evidence concerning the amount of time spent on the case.  Class counsel's explanation at the fairness hearing of time spent on the matter was limited to:

Time and labor involved, this case has been pending for a little over a year now. We have gone through a lot of discovery, expert reports, motion practice, getting cued up for the class certification motion.

- 63 -

Tr. May 7, 2018, DE58 at 10:4-7.

Class Counsel's Motion for Attorneys' fees is not much more informative.  Counsel's description of time and effort spent on the case is limited to a cursory recital of case activity in broad terms such as "negotiating the parameters of the class action settlement" and "preparing of the parties' class action settlement agreement, along with the proposed class notice and claim form." DE44:6-7.  Plaintiff's only evidence in support of his argument for fees is contained in the declarations of class counsel Michael L. Greenwald in support of preliminary and final approval, and that is limited to a general recitation of procedural history.  DE37:6-7¶¶25-28; DE44-1:8-9¶¶42-57; DE44:8.  The record is completely devoid of time records, or even a general estimate of hours spent litigating the matter.   A common fund fee award cannot be sustained where class counsel fail to submit their hours.  *See Grunin v. International House of Pancakes,* 513 F.2d 114, 126 (8th Cir. 1975); *Lawler,* 2017 WL 470517, at *10-*11.

Even assuming *Camden I* continues to dictate that fees be awarded as a percentage of the common fund, the Eleventh Circuit specifically held in *Waters* that "while we have decided in this circuit

that a lodestar calculation is not proper" as the single determinant for attorneys' fees "in common fund cases, we may refer to that figure for comparison" in order to ensure that the percentage awarded is reasonable. *Waters,* 190 F.3d at 1298. For the district court to fulfill its obligation to the class, it should have undertaken this analysis – particularly where, as here, the case had been pending less than eight months when the parties settled the case. DE1; DE33.

The district court should at least consider the attorneys' hours and rates – i.e., their "lodestar" – in setting a percentage to be awarded from a common fund. But class counsel have concealed from the court and the class how many hours they devoted to the case, nor is there any reference to their hourly rates in the record. Accordingly, the district court lacked information necessary to fulfill its obligations pursuant to *Johnson* and *Waters.*

Finally, perhaps "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Jason v. Houston Indep. Sch. Dist.,* 158 F.3d 205, 209 (5th Cir. 1998)(quoting *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)(quoting *Hensley,* 461 U.S. at 436); *see also Von Clark v. Butler,* 916 F.2d 255, 258 (5th Cir.1990). Yet

the district court failed to take account of Dickenson's objection that less than two percent of the low-end of prospective damages was a remarkably poor result.

The district court is tasked with the role of guardian of absent class members. Every dollar that is awarded to class counsel in this common fund case is one dollar less for class members, who are already only recovering a fraction of their statutory damages. The district should act with "a jealous regard to the rights of those who are interested in the fund" and avoid awarding a windfall to class counsel. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 53 (2d Cir. 2000). The district court's failure to conduct a thorough analysis requires reversal.

## VI.    CONCLUSION

The judgment below should be reversed for reasons stated above.

Date:  August 6, 2018          Respectfully submitted,

LAW OFFICE OF ERIC ALAN ISAACSON
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA   92037-6231
Telephone: (858) 263-9581

John W. Davis (FL Bar No. 193763)
john@johnwdavis.com
Law Office of John W. Davis
501 W. Broadway, Suite 800
San Diego, CA  92101
Telephone:  (619) 400-4870

C. BENJAMIN NUTLEY
nutley@zenlaw.com
1055 E. Colorado Blvd., 5th Floor
Pasadena, CA  91106
Telephone:  (626) 204-4060

## VII.  CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6). This brief contains 12,994 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and it has been prepared in proportionally spaced font using Microsoft Word in Century Schoolbook 14 point font.

LAW OFFICE OF ERIC ALAN ISAACSON
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA   92037-6231
Phone: (858) 263-9581
email: ericalanisaacson@icloud.com

## VIII. CERTIFICATE OF SERVICE

I do hereby certify that on August 6, 2018, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will send notice of this filing to all parties indicated on the electronic filing receipt.

LAW OFFICE OF ERIC ALAN ISAACSON
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA   92037-6231
Phone: (858) 263-9581
email: ericalanisaacson@icloud.com